UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KAREN L. RAUS,

        Plaintiff,

      -against-

THE TOWN OF SOUTHAMPTON, NEW YORK, ITS
BOARD OF TRUSTEES OF THE FREEHOLDERS
AND COMMONALITY OF THE TOWN OF
SOUTHAMPTON, ANNA THRONE-HOLST, Town
Supervisor for the Town of Southampton, its Board of
Trustees of the Freeholders and Commonality of the
Town of Southampton, TIFFANY SCARLATO, as Town
Attorney for the Town of Southampton, its Board of
Trustees of the Freeholders and Commonality of the Town
of Southampton, DAVID BETTS, Chief Investigator
for the Town of Southampton, its Board of Trustees of
the Freeholders and Commonality of the Town of
Southampton, and J. BRIAN DWYER, Ordinance Inspector
for the Town of Southampton, its Board of Trustees of the
Freeholders and Commonality of the Town of Southampton,

        Defendants.
-----------------------------------------------------------X

MEMORANDUM AND ORDER

CV 13-7056

(Wexler, J.)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   MAY 18 2015   ★

LONG ISLAND OFFICE

APPEARANCES:

Harold Steuerwald, LLP
By:   Harold Steuerwald, Esq.
112 South Country Road, Ste 116
Bellport, NY 11713
Attorneys for Plaintiff

Devitt Spellman Barrett, LLP
By:   Kelly E.Wright, Esq.
50 Route 111
Smithtown, NY 11787
Attorneys for Defendants

WEXLER, District Judge:

Plaintiff Karen L. Raus ("Raus" or "Plaintiff") brings this action claiming that the Defendants -- namely, the Town of Southampton, New York, (the "Town"), Anna Throne-Holst, the Town Supervisor ("Throne-Holst"), Tiffany Scarlato, the Town Attorney ("Scarlato"), David Betts, the Chief Investigator ("Betts"), and J. Brian Dwyer, the Ordinance Inspector ("Dwyer") (collectively "Defendants")[1] have violated her due process and equal protection rights under the Fourteenth Amendment of the U.S. Constitution, and have subjected her to a malicious abuse of process in violation of 42 U.S.C. § 1983 and abuse of process under New York state law. She seeks a preliminary and permanent injunction, a declaratory judgment, damages and costs. Defendants move to dismiss the complaint in its entirety pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Rule 12(b)(6).[2] For the reasons that follow, Defendants' motion is granted.[3]

## BACKGROUND

---

[1] By stipulation, the parties previously dismissed claims against Sundy Schermeyer, the Town Clerk and Kathleen Murray, the Deputy Town Attorney, and amended the caption accordingly. See docket entry ("DE"), 29.

[2] In her opposition, the Plaintiff indicates that the motion is one for summary judgment. Yet, the Court permitted Defendants to move to dismiss, see DE 24 and order of April 23, 2014, and except for a typographical error on Defendants' Notice of Motion indicating a motion under Rule 56, that mistake was corrected and the motion was presented as one to dismiss. The Court addresses the motion as one to dismiss pursuant to Rule 12(b).

[3] In her opposition papers, Plaintiff seeks leave to amend her first amended complaint. Plaintiff has already amended her complaint once, and she does not provide a proposed second amended complaint. The request for leave to move to amend is denied. See La Barbera v. Ferran Enterprises, Inc., 2009 WL 367611, at *11 (E.D.N.Y. 2009) (plaintiff's motion for leave to amend complaint denied for failure to submit a proposed amended complaint and as untimely).

I. Plaintiffs' Complaint

The following facts are taken from Plaintiffs' 28-page, first amended complaint, or, as noted, from documents properly considered in the context of a motion to dismiss.

1. Interactions with Town Code Inspectors from 2007-2012

Since 1995, Plaintiff has been a resident and owner of a single family dwelling at 6 Baywood Drive, in the Town of Southampton, NY. First Amended Complaint ("FAC."), ¶ 10, 18. Beginning in the Spring of 2007, Plaintiff alleges that, after placing a storage trailer on her property, an Ordinance Inspector from the Town visited her property and informed her that having a trailer on her property was prohibited by the Code of the Town of Southampton. FAC, ¶¶ 22-25. Plaintiff also alleges that the Ordinance Inspector directed her to plant grass on part of her property "because he did not like the way it looked," and said she should install a six-foot fence on the south side of her premises. FAC, ¶¶ 26-27. Plaintiff went to the Building Department for the Town for a permit to build the fence and was advised that she was not permitted to build a six-foot fence. FAC, ¶¶ 28, 30.

Subsequently, also in Spring of 2007, a Building Inspector came to Plaintiff's premises and directed that the trailer on her property be removed since they were illegal in the Town. FAC, ¶¶ 31-36. Plaintiff alleges that the trailer broke while she was attempting to remove it, FAC, ¶ 36, but does not state whether the trailer and its content were ever fully removed.

Two years later, in September 2009, Plaintiff received an Appearance Ticket from a Ordinance Inspector from the Town, for five Code violations, including 3 charges for property maintenance and litter, a charge for changing the use of her residence to a multiple family by renting it out, and a charge for building an accessory apartment without a permit. FAC, ¶¶ 38-42.

-3-

Plaintiff alleges that despite being signed by Ordinance Inspector Alfred Tumbarello, at no time did he ever conduct an inspection of Plaintiff's property.  FAC, ¶¶ 43-46.

Plaintiff appeared in Court as required by the Appearance Ticket, and conferenced with the Assistant Town Attorney Michael Slendeski, who advised that "she would have to plead guilty" and get a permit for the apartment in the lower level of her home.  FAC, ¶¶ 48-49.  When Plaintiff went to the Building Department, she was informed that she would not be permitted to have an accessory apartment since the property was not zoned for that and because she lived in her home.  FAC, ¶ 50.  Plaintiff also alleges that someone from the Building Department told her that she could not be ticketed for an illegal apartment if no interior inspection of her home had been conducted.  FAC, ¶ 51.

When she appeared in Court a second time, Plaintiff again asserted that she did not have an accessory apartment.  Appointments were made for inspections, which occurred in January and May 2010.  FAC, ¶¶ 54-57.  Upon their completion, she was told she was "good to go," and when back in Court, she pled guilty to the litter charges and paid a fine.  FAC, ¶¶ 57-58.

Plaintiff further alleges that beginning in 2009, she contacted the Office of Code Enforcement regarding the property across the street from her, which she alleges had ten vehicles stored there, was littered with trash, had several trailers for boats and jet skis, housed a dumpster for 5 years, had a second kitchen she observed in the basement and two other apartments, and numerous people were living there.  She alleges that she was told that there was nothing the Town could do because they could not get inside to inspect.  FAC, ¶¶ 59-63.

2. The September 11, 2012 Violations

Three years later, on September 11, 2012, Town Ordinance Inspector, Defendant Dwyer

came to Plaintiff's house and issued her an Appearance Ticket, based on complaints received

from Pamela Sadousky[4] that Plaintiff was renting her premises without a permit. FAC, ¶¶ 64-68.

Plaintiff alleges that the ticket was wrongfully being issued without first conducting an

inspection, and that she repeatedly argued this to Inspector Dwyer when he issued her the ticket.

FAC, ¶¶ 67-72.

Finally Dwyer relented and agreed to inspect the interior of Plaintiff's premises. In the

lower level, he found a microwave, which he reported to Plaintiff deemed the space a kitchen.

Plaintiff proceeded to throw the microwave in the garbage, and asked if then she was in

compliance, to which Dwyer responded "Yes, you are." FAC, ¶¶ 72-73. Plaintiff then signed a

consent to the inspection, which she alleges was without reading it. FAC, ¶ 76.

Plaintiff appeared in Court and was charged with eight violations, including for failure to

have smoke detectors or carbon monoxide alarms, for storage in the building and near the burner,

for litter/property maintenance, for having a dumpster on her property, for a change of use of the

property because of the rental, and for not having a rental permit. The violations were sworn by

Defendant Dwyer and notarized by Defendant Betts. FAC, ¶¶ 77-88. Plaintiff alleges there was

---

[4]Defendants assert that Ms. Sadousky rented space from Plaintiff and include in their opposition papers a decision of the Town of Southampton Justice Court, in Raus v. Sadousky, 12-090034, brought by Plaintiff against Pam Sadousky for $3,000.00 in unpaid bills, which action included a counterclaim for the return of a security deposit in the amount of $1,000.00. See Declaration of Kelley E. Wright ("Wright Dec."), Ex. H: Decision in Town of Southampton Justice Court, Raus v. Sadousky, 12-090034 (the "Decision"). The Decision states that in June 2012, Plaintiff sent Sadousky a 30-day notice to terminate, and several months after the landlord/tenant petition was dismissed, on September 11, 2012, Raus was charged with violations, following a complaint made to the Town by Sadousky of the violations at the house, including the failure to have a rental permit. See Wright Dec., Ex. H: Decision, at 2. The Town Justice Court granted Plaintiff judgment in the amount of $3,000.00 and dismissed the counterclaim. Id., at 4. In her complaint here, Plaintiff refers to Ms. Sadousky as her former roommate. FAC ¶ 105.

no supporting affidavits, that no inspection was conducted prior to receiving the Appearance Ticket, and that Dwyer knew the allegations were false. FAC, ¶¶ 89-94.

Following her court appearance, Plaintiff called Dywer and on October 2, 2012 he came to her house with another inspector. Plaintiff alleges that Dwyer said, "I just did what I was told to do that day," and that she should address the charges for the smoke detector and the carbon monoxide alarm, and the dumpster and that "it will all be over." FAC, ¶¶ 97-100. According to Plaintiff, Dwyer never responded to her question as to why the house across the street could have a dumpster for over five years. FAC, ¶ 102.

On October 25, 2012, Dwyer returned to Plaintiff's house to re-inspect for the smoke detectors and carbon monoxide alarms. At that time, Plaintiff told Dwyer that Pamela Sadousky, Plaintiff's former roommate, "had made up all the complaints" she filed with the Town. FAC, ¶ 105. Dwyer responded that "you're all clear now. You're going to Court and pay a small fine and that's it." FAC, ¶ 106.

Back at Court on October 26, 2012, the Assistant Town Attorney asked if Plaintiff got a rental permit, which Plaintiff said was not necessary since she did not have an accessory apartment. Plaintiff was told she had to plead guilty to the smoke detectors and pay a $3,000.00 fine. When Plaintiff complained she could not pay that fine, it was reduced to $1,000.00, and she was told that she could plead guilty and accept the reduced fine, or challenge the charges. Plaintiff finally agreed to the $1,000.00 fine and pled guilty to not having sufficient smoke detectors. FAC, ¶¶ 107-112.

Plaintiff alleges that "it is a normal custom and practice" for individuals to plead out for a monetary sum, that she was treated differently than others similarly situated, including her

neighbor across the street, and that charging her was a way to abuse and harass her. FAC, ¶¶ 115-128. According to the complaint, Plaintiff served a Notice of Claim on the Town and its various officials on December 11, 2012.[5]

As noted above, Plaintiff's first amended complaint asserts four causes of action, for violation of Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment, for violation of Plaintiff's equal protection rights under the Fourteenth Amendment, for malicious abuse of process in violation of 42 U.S.C. § 1983 and for abuse of process under New York law. Plaintiff seeks a preliminary and permanent injunction, a declaratory judgment, attorneys' fees and damages. Defendants move to dismiss the complaint in its entirety, and for the following reasons, that motion is granted.

DISCUSSION

I.    Standards on Motion to Dismiss

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of Plaintiff. Bold Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard set forth in Conley v. Gibson, 355 U.S. 41 (1957), that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," id. at 45-46. The Supreme Court discarded the "no set of facts"

---

[5]A copy of the Notice of Claim is attached to the Wright Dec., Ex. D. It was signed by the Plaintiff and dated December 11, 2012. It is addressed to the "City/Town Village/County/State of Southampton, NY" and claims "[v]iolation of constitutional rights." No affidavit of service has been provided to the Court. Wright Dec., Ex. D, at 1.

language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although heightened factual pleading is not the new standard, Twombley holds that a "formulaic recitation of cause of action's elements will not do... Factual allegations must be enough to raise a right to relief above the speculative level." Twombley, at 555. A pleading need not contain "'detailed factual allegations,'" but must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, at 678, quoting Twombley, at 555 (other citations omitted). "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, at 679. Reciting bare legal conclusions is insufficient, and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, at 679. A pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, at 678-679.

When considering a motion to dismiss, the Court may consider documents attached to or incorporated by reference into the complaint. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) (citations omitted). This includes public records, and documents concerning a related state proceeding. Taylor v. Vermont Dept. of Educ., 313 F.3d 768, 776 (2d Cir. 2002) (public records, such as state court filings, also notably incorporated by reference into the complaint, may be considered on a motion to dismiss); Thomas v. Venditto, 925 F.Supp.2d 352, 359 (E.D.N.Y. 2013) (when considering a motion to dismiss, the court may take judicial notice of an order in a related criminal proceeding)

(citations omitted).

II.    The Present Motion

    A.    Statute of Limitations and Notice of Claim

Defendants argue, and Plaintiff acknowledges, that a three-year statute of limitations applies to Plaintiff's claims under 42 U.S.C. § 1983. Eagleston v. Guido, 41 F.3d 865, (2d Cir. 1994) (the statute of limitations is three years for § 1983 actions arising in New York) (ciations omitted). Therefore any claims based on conduct occurring three years prior to the filing of Plaintiff's complaint on December 10, 2013 are time barred.

Defendants also argue that Plaintiff's Notice of Claim is defective, warranting dismissal of Plaintiff's state law claim for abuse of process. Defendants first argue that it does not name the individual Defendants, thus precluding the state law claims against them. Second, Defendants argue that New York General Municipal Law § 50-e requires that the Notice of Claim be served within ninety (90) days after the claim arises, and Plaintiff's complaint alleges it was served on December 11, 2012, ninety-one (91) days after the occurrence, and therefore too late.

First, a review of the face of the Notice of Claim, attached as Exhibit D to the Wright Dec. reveals that it names only the "City/Town/Village/County/ State of Southampton, NY," and not the individual Defendants. Defendants argue the Plaintiff's failure to name the individual defendants in the Notice of Claim is fatal to the state claims against those individuals.

Recent courts have held that New York General Municipal law § 50-e does not require that the individuals be specifically named in the notice of claim as a condition precedent to bringing the claims. See Goodwin v. Pretorius, 105 A.D.3d 207, 209-210, 962 N.Y.S.2d 539,

541 (4th Dept. 2013) (citations omitted). Another courts in this circuit have, in the absence of clarity from the Court of Appeals, followed the reasoning of the Goodwin court and declined to dismiss claims for failure to identify the individual defendant in the notice of claim. See Weaver v. City of New York, 2014 WL 950041, *8 (E.D.N.Y. 2014); Shahzad v. County of Nassau, 2013 WL 6061650, *7 (E.D.N.Y. 2013); Chamberlain v. City of White Plains, 986 F.Supp.2d 363, 397 (S.D.N.Y. 2013). Similarly, this Court declines to dismiss the state law claims for the failure to name the individual defendants, and turns it attention to the timeliness issue.

Defendants' second argument is that the Notice of Claim is untimely since it was not served within the ninety (90) day period prescribed by New York law. General Municipal Law § 50-e (1)(a) states that in any case founded on tort where a notice of claim is required, that notice must be served in within ninety days of when the claim arose. The Notice of Claim here is signed and dated December 11, 2012. Furthermore, Defendants assert that the Town received only a partial document on December 20, 2012. See Def. Reply Mem., at 9-10. In her opposition, Plaintiff fails to provide an affidavit of service indicating when it was served, and merely argues in response that "Plaintiff believes her Notices of Claim[6] were timely filed in this matter," and appears to concede the defect in the Notice, stating "[s]he does not however seek any kind of duplicative recovery in this matter by alleging both [state and federal] theories." Pl. Opp., at 6.

Since the Notice of Claim on its face is dated December 11, 2012, which is 91 days after the claim arose, it could not have been served within ninety days as required by the General

---

[6]Plaintiff refers to "Notices" of Claim, yet the Court has been provided only one Notice, which the Court notes was submitted by the Defendants, not the Plaintiff.

Municipal law. Without evidence of proper timely service, the Court finds that the Notice of Claim is untimely. <u>Williams-Smith v. MTA New York City Transit</u>, 82 A.D.3d 512, 918 N.Y.S.2d 345 (1st Dept. 2011) (notice of claim untimely where evidence conclusively establishes that the notice was mailed ninety-one days after the accident); <u>McGarty v. City of New York</u>, 44 A.D.3d 447, 843 N.Y.S.2d 287 (1st Dept. 2007) (failure to seek court approval to excuse a late notice of claim requires dismissal). Since the notice of claim is untimely, Defendants' motion to dismiss the state law claim is granted.

B.    <u>Claims against Scarlato and Throne-Holst</u>

Defendants also seek to dismiss the claims against Defendants Anna Throne-Holst (the Town Supervisor) and Tiffany Scarlato (the Town Attorney), arguing there are no specific allegations in the complaint of their personal involvement, and in any event, they are protected by absolute and legislative immunity. Plaintiff's complaint does not contain any specific allegations that these individual Defendants were personally involved, warranting their dismissal from this action. <u>See</u> <u>Canzoneri v. Incorporated Village of Rockville Centre</u>, 986 F.Supp.2d 194, 205 (E.D.N.Y. 2013) (allegations of an "individual officer's personal involvement in the 'constitutional deprivation[ ]' is a 'prerequisite' to a Section 1983 claim against them.") (quoting <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir.1977)). Furthermore, in her opposition, Plaintiff appears to concede that these two individual Defendants are not personally involved and are protected by immunity for any individual claims, stating that based on the information currently available, "Plaintiff must agree that Immunity could well apply to any individual claims against Defendant Throne-Holst and Defendant Scarlato, as they are not alleged by the Plaintiff to have been personally involved..." <u>See</u> Plaintiff's Memorandum in Opposition ("Pl. Mem. in

-11-

Opp."), at 4. Since there are no allegations of personal involvement, which the Plaintiff concedes, Defendants' motion to dismiss the claims against Defendants Throne-Holst and Scarlato is granted.

C.     Due Process Claim

The essence of Plaintiff's due process claim is that her rights were violated as a result of the misconduct by Ordinance Inspector Dwyer and Chief Investigator Betts, and the issuance of knowingly false accusatory documents, which, she alleges, is a routine practice of the Defendants. She alleges such misconduct so "shocks the conscience" that it supports a substantive due process claim. See Pl. Mem. in Opp., at 5.

1. Procedural Due Process

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493 (1985) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)); Canzoneri v. Incorporated Village of Rockville Centre, 986 F.Supp.2d 194, 202 (E.D.N.Y. 2013) (citations omitted).

It is unclear from Plaintiff's complaint what interest plaintiff asserts was deprived without due process, other than stating general conclusions that the laws as "applied by these Defendants, violate Plaintiff's right to Due Process," and "the conduct of these Defendants has imposed irrational and unjustifiable restrictions upon the Plaintiff, with unconscionable results." FAC, ¶ 131. Nor does Plaintiff, even in response to Defendants' arguments that no property interest was deprived, clarify the alleged deprivation. Instead, Plaintiff merely asserts ""[t]here is simply no

question that the misconduct complained of constitutes a violation of Plaintiff's due process rights..." Pl. Mem. in Opp., at 5. Yet the complaint itself details that once served with the Appearance Ticket, Plaintiff was afforded due process through a court process that involved a conference, a subsequent inspection of her property, and negotiations with the Town Attorney concerning disposition of the violations and the related fines. The Court finds that Plaintiff's generalized allegations here, without more, fail to state a claim for a procedural due process violation. <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678-679. Therefore, Defendants' motion to dismiss this claim is granted.

To the extent Plaintiff's due process claim rests on allegations that the accusatory instrument itself was false, and that these Defendants committed misconduct by bringing the charges without first inspecting her property, due process was available to her through a state court proceeding. Plaintiff could have brought an Article 78 proceeding, by which New York state courts are empowered to issue "'common law writs of certiorari to review, mandamus, and prohibition.'" <u>New York State Nat. Organization for Women v. Pataki</u>, 261 F.3d 156, 168 (2d Cir. 2001) (quoting <u>Hellenic Am. Neighborhood Action Comm. v. City of New York</u>, 101 F.3d 877, 881 (2d Cir. 1996) (other citations omitted)). According to the Second Circuit, an Article 78 proceeding provides an "adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty," thus precludes a procedural due process violation claim. <u>Hellenic Am. Neighborhood Action Comm.</u>, 101 F.3d at 881-882.

### 2. Substantive Due Process

The gravaman of Plaintiff's substantive due process claim is that Defendants' actions have so "shocked the conscience" that they constitute a substantive due process violation. The

"substantive component [of due process] guard[s] the individual against 'the exercise of power without any reasonable justification in the service of a legitimate governmental objective,'" Lombardi v. Whitman, 485 F.3d 73, 79 (2d Cir. 2007) (quoting Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). As stated by the Second Circuit, "'[i]n order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly 'brutal and offensive to human dignity....'" Lombardi, 485 F.3d at 81-82 (quoting Smith v. Half Hollow Hills Cent. School Dist., 298 F.3d 168, 173 (2d Cir. 2002) (other citations omitted); Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005); Robischung-Walsh v. Nassau County Police Dept., 421 Fed.Appx. 38, 41 (2d Cir. 2011) (substantive due process claim fails since no allegations of conscience-shocking conduct).

The Court finds that Plaintiff's allegations, even accepted as true as the Court must on a motion to dismiss, do not rise to the level as required to substantiate a substantive due process claim. Therefore, Defendants' motion to dismiss this claim is granted.

B.    Equal Protection Claim

Plaintiff's equal protection claim asserts that her rights were violated because she was treated differently than those similarly situated. A plaintiff making such a claim may proceed on the theory that she was subjected to "selective enforcement" or treated as a "class of one." To state a claim for "selective enforcement" requires plaintiff show that "(1) they were treated differently from other similarly situated individuals and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." MacPherson v. Town of

Southampton, 2013 WL 6058202, *14 (E.D.N.Y. 2013) (citations omitted).

A "class of one" claim succeeds where the plaintiff can show intentional treatment different than those similarly situated, and a lack of a rational basis for that treatment. Sacher v. Village of Old Brookville, 967 F.Supp.2d 663, 670 (E.D.N.Y. 2013) (citing Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 58 (2d Cir.), cert. denied, 131 S.Ct. 824 (2010).

According to the Second Circuit, "'class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" Ruston, 610 F.3d at 59 (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)). Such a claim requires that the plaintiff establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." Ruston, 610 F.3d at 59-60 (citations omitted). In that case, the Court affirmed the district court's dismissal of plaintiffs' equal protection claims, which were based on the town denying sewer access to plaintiff but granting it to others, because the plaintiff failed to allege that the other identified properties were sufficiently similar that "no rational person could see them as different." Ruston, 610 F.3d at 60.

So too here. The essence of Plaintiff's equal protection claim is that she was prosecuted for code violations and her neighbor at 1375 Noyac Road was not, arguing this dissimilar treatment supports her equal protections claim. She alleges that since 2009, she made various complaints about that address for having numerous vehicles and trailers on the property, for trash, noise, numerous residents, and a dumpster for five years. FAC, ¶¶ 59-61. She also claims

-15-

she informed the code inspectors that she observed a second kitchen in the basement, and that there were two apartments elsewhere in the house, and was told that there was nothing the Town could do because they could not get in to inspect. FAC, ¶¶ 62-63. She asserts she never got an answer as to why the house had a dumpster "in the driveway continuously for five (5) years," (FAC, ¶¶ 101-102), and that ordinance inspectors routinely ignore code violations by "members of other groups," and asserts that code violations "were taking place in plain view across the street at 1375 Noyac Road, and yet those neighbors were never cited." FAC, ¶ 120.

Plaintiff's claim that her equal protection rights were violated fails since she does not sufficiently allege that the premises at 1375 Noyac Road is "similarly situated" to hers such that "no rational person" could see them as different to justify the allegedly different treatment. Plaintiff was prosecuted for code violations for, amongst other things, failure to have smoke and carbon monoxide detectors, for renting without a permit after a complaint was lodged by the alleged tenant, and for having storage near the boiler. Other than complaining that there was a dumpster there for five continuous years, and that other people may have been living there at certain points in time, Plaintiff does not provide sufficient detail indicating that she is "similarly situated" to the premises at 1375 Noyac Road. She does not provide any allegations concerning whether that premises had committed the same code violations with which she was charged, such as, for example, the status of the smoke detectors and carbon monoxide detectors in that house or whether they had a rental permit. Simply put, her allegations even accepted as true, do not support a conclusion that "no rational" person could see a reason to justify different treatment.

It is clear to the Court that Plaintiff believes she was treated unfairly and charged with violations while others were not, but on these facts, there has been no violation of constitutional

rights. Indeed, some courts have warned of citizen frustration spawning equal protection claims, noting the "'danger of ordinary disputes between a citizen and a municipality—whether it be about land use, licenses, inspections, or some other regulatory or investigative function of local governments—being transformed into federal lawsuits by an incorrect, overexpansive theory of class-of-one liability.'" MacPherson, 2013 WL 6058202 at 14 (quoting Crippen v. Town of Hempstead, 2013 WL 1283402, at *7 (E.D.N.Y. 2013)). Such is the case here.

The Court finds that Plaintiffs' allegations, evan accepted as true, do not adequately show that she was being treated differently than any other similarly situated homeowner in the Town. Therefore, her equal protection claim fails and Defendants' motion to dismiss is granted. MacPherson v. Town of Southampton, 2013 WL 6058202, *14 (E.D.N.Y. 2013) (because plaintiffs' complaint is bereft of factual allegations suggesting that MacPherson is being treated differently from others similarly situated, equal protection claim—whether pled as a selective enforcement claim or a class-of-one claim—fails).

### C. Malicious Abuse of Process Claim

A malicious abuse of process claim "'lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" Savino v. City of New York, 331 F.3d 63, 76-77 (2d Cir. 2003) (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)); . "Malicious abuse of criminal process also supports liability under § 1983." Savino, 331 F.3d at 76-77; see also Mangino v. Inc. Village of Patchogue, 814 F.Supp.2d 242, 248 (E.D.N.Y. 2011); Coleman v. City of New York, 585 Fed.Appx. 787, 788 (2d Cir. 2014).

In <u>Savino</u>, the Second Circuit reversed the district court's decision to deny summary judgment after determining there was an issue of fact as to whether probable cause existed to substantiate the legal process.  In so doing, the Second Circuit questioned the importance of probable cause in the analysis, and citing various cases from the New York Court of Appeals, stated that "[i]n order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action."  <u>Id.</u>, at 77 (italics in original) (citing <u>Curiano v. Suozzi</u>, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 468–69, 469 N.E.2d 1324 (1984); <u>Hauser v. Bartow</u>, 273 N.Y. 370, 374, 7 N.E.2d 268 (1937); <u>Dean v. Kochendorfer</u>, 237 N.Y. 384, 143 N.E. 229 (1924)).  The Second Circuit further noted that "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution.  Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution."  <u>Savino</u>, 331 F.3d at 77.

Plaintiff here fails to satisfy this burden.  Raus alleges in her complaint that the various code violations were filed against her "in order to take advantage of the Plaintiff and force her to pay a monetary fine," since they knew it would be difficult for her "to spend money to hire an attorney," forcing her to plead guilty and causing her to "suffer financially by having to pay monetary fines."  FAC, ¶ 143.  This is insufficient to support a "collateral objective" incidental to the prosecution.  The fines Plaintiff faced were incumbent within and an evitable consequence of the code violation process.  They are not separate from, or "beyond or in addition to," the criminal prosecution.  Therefore, even if the Defendants were prosecuting Plaintiff with the motivation to extorting fines, this is not a separate "collateral objective" incidental to the prosecution, and therefore does not support a claim for malicious prosecution.  <u>See</u> <u>Peter L.</u>

Hoffman, Lotte, LLC v. Town of Southampton, 523 Fed.Appx. 770, 771-772 (2d Cir. 2013)
(affirming district court's decision to grant a motion to dismiss where plaintiff's allegations that
Town's filing of criminal charges was in retaliation for plaintiff's attempt to enjoin the local
Justice court or an attempt to "coerce and pressure" plaintiffs from pursing certain legal defenses,
were not sufficient collateral objectives necessary for a malicious abuse of process claim);
Coleman v. City of New York, 585 Fed.Appx. at 788 (summary judgment properly granted
where retaliation for some offense will not suffice as a collateral motive for the purposes of an
abuse of process claim, and no alternative motive is alleged); MacPherson v. Town of
Southampton, 2013 WL 6058202, *7-8 (E.D.N.Y. 2013) (plaintiff's alleged collateral objective
that defendants sought to force plaintiff to spend money to defend complaints does not suffice for
malicious abuse of process claim); Goldring v. Zumo, 2015 WL 148451, *4 (E.D.N.Y. 2015)
(plaintiff's allegation that the criminal process issued against him was driven by spite and to
cause plaintiff's business harm is not a sufficient collateral objective and motion to dismiss
malicious abuse of process claim granted, where there is no allegation that defendants had any
intent other than to enforce valid local statutes); Crews v. County of Nassau, 2007 WL 4591325,
*12 (E.D.N.Y. 2007) (motion to dismiss granted where plaintiffs have merely alleged that
defendants were motivated by a desire to cover up their misdeeds, but not that defendants had a
purpose other than to prosecute plaintiff); but see Conte v. County of Nassau, 2010 WL 3924677,
*20 (E.D.N.Y. 2010) (questions of fact precluded summary judgment on malicious abuse of
process claim where plaintiff alleged that process was brought to extort a resolution of a civil
matter by obtaining refunds and financial settlements for various  complainants, and to ruin
plaintiff's business).  Since Plaintiff fails to allege a collateral objective beyond the prosecution

-19-

of the Code violations, Defendants' motion to dismiss the malicious abuse of process claim is granted.[7]

## CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss the complaint is granted. The Clerk of the Court is directed to dismiss this case in its entirety and close this matter.

SO ORDERED.

s/ Leonard D. Wexler

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
May 2015

---

[7]To the extent Plaintiff's complaint asserts a Monell claim, that claim also fails. As Defendants correctly argue, Plaintiff's conclusory, generalized allegations that there is a "clear policy and practice" of misconduct cannot support a Monell claim. Furthermore, the Court finds that since Plaintiff's substantive constitutional violation claims fail, so do her Monell claims. See Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct.").